**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| In re: | ) | MDL Docket No. _____ |
| | ) | |
| T-MOBILE 2022 CUSTOMER DATA | ) | |
| SECURITY BREACH LITIGATION | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TRANSFER OF
ACTIONS TO THE WESTERN DISTRICT OF WASHINGTON PURSUANT TO
28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
<u>PRETRIAL PROCEEDINGS</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 2

III. ARGUMENT ................................................................................................................... 3

    A. Pretrial Transfer and Consolidation under Section 1407 is Appropriate and Necessary in this Litigation ................................................................................... 3

        1. The Litigation Involves Common Questions of Fact ................................. 3

        2. Transfer and Consolidation Will Prevent Duplicative Discovery ............ 4

        3. The Parties Face Inconsistent Pretrial Proceedings Absent Transfer and Consolidation ..................................................................................... 5

        4. There are Enough Actions to Support Centralization ............................... 5

    B. The Western District of Washington is the Appropriate Transferee Forum ......... 6

    C. In the Alternative, the Western District of Missouri is an Appropriate Transferee Forum .................................................................................................. 9

IV. CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 21st Century Oncology Customer Data Security Breach Litigation*,
  214 F. Supp. 3d 1357 (J.P.M.L. 2016) ............................................................................. 5, 7

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
  410 F. Supp. 3d 1350 (J.P.M.L. 2019) ................................................................................. 4

*In re Amoxicillin Patent & Antitrust Litig.*,
  449 F. Supp. 601 (J.P.M.L. 1978) ....................................................................................... 6

*In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*,
  509 F. Supp. 3d 1362 (J.P.M.L. 2020) ................................................................................. 4

*Clark v. T-Mobile US, Inc.*,
  No. 2:23-cv-00103, U.S. District Court for the Western District of
  Washington, ........................................................................................................................ 1

*In re Davol, Inc./C.R. Bard, Inc. Polypropylene Hernia Mesh Prods. Liab. Litig.*,
  316 F. Supp. 3d 1380 (J.P.M.L. 2018) ................................................................................. 9

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
  196 F. Supp. 2d 1375 (J.P.M.L. 2002) ................................................................................. 7

*In re: Equifax, Inc., Customer Data Sec. Breach Litig.*,
  289 F. Supp. 3d 1322 (J.P.M.L. 2017) ............................................................................. 4, 7

*In re Jamster Mktg. Litig.*,
  427 F. Supp. 2d 1366 (J.P.M.L. 2006) ................................................................................. 7

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  363 F. Supp. 3d 1372 (J.P.M.L. 2019) ............................................................................. 4, 7

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  544 F. Supp. 3d 1371 (J.P.M.L. 2021) ................................................................................. 4

*In re: Park-West Galleries, Inc. Mktg. & Sales Practices Litig.*,
  655 F. Supp. 2d 1378 (J.P.M.L. 2009) ................................................................................. 8

*In re Phenylpropanolamine (PPA) Products Liability Litig.*,
  173 F. Supp. 2d. 1377 (J.P.M.L. 2001) ................................................................................ 8

*In re Phila. Life Ins. Co. Sales Pracs. Litig.*,
  149 F. Supp. 2d 937 (J.P.M.L. 2001) ................................................................................... 6


*In re Resource Exploration Inc. Sec. Litig.*,
    483 F. Supp. 817 (J.P.M.L. 1980) .................................................................................... 4

*In re: T-Mobile Customer Data Security Breach Litigation*,
    576 F. Supp. 3d 1373 (J.P.M.L. 2021) ..................................................................... 3, 5, 9

*In re Wireless Tel. Replacement Prot. Programs Litig.*,
    180 F. Supp. 2d 1381 (J.P.M.L. 2002) ............................................................................. 6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    223 F. Supp. 3d 1353 (J.P.M.L 2016) .............................................................................. 7

**Statutes**

28 U.S.C. § 1407 ................................................................................................................ *passim*

**Other Authorities**

*Current Judicial Vacancies*, UNITED STATES COURTS (Feb. 5, 2023),
    https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-
    judicial-vacancies (last visited Feb. 5, 2023) .................................................................. 9

*Judicial Emergencies*, UNITED STATES COURTS (Feb. 5, 2023),
    https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-
    emergencies (last visited Feb. 5, 2023) ........................................................................... 8

*Manual for Complex Litigation, Fourth* § 20.131 (2004) ............................................................ 3, 6

## I. INTRODUCTION

T-Mobile is one of the largest consumer brands in the United States, collecting vast troves of personal information from its over 100 million customers and profiting from that data through its own marketing efforts and by selling sensitive consumer information to third parties. Even after experiencing one of the largest and most consequential data breaches in U.S. history in August 2021, T-Mobile announced on January 19, 2023 that it had once again suffered a massive data breach, exposing the highly sensitive personal information of 37 million consumers.

Pursuant to 28 U.S.C. § 1407 and the Rules of Civil Procedure of the Judicial Panel on Multidistrict Litigation, Stephen Clark, Plaintiff in the case styled *Clark v. T-Mobile US, Inc.*, No. 2:23-cv-00103, U.S. District Court for the Western District of Washington, respectfully moves the Judicial Panel on Multidistrict Litigation for an Order transferring the eleven cases listed in the Schedule of Actions filed concurrently herewith (collectively, the "Actions"), as well as any tag-along cases subsequently filed involving similar facts or claims, to the U.S. District Court for the Western District of Washington for coordinated or consolidated proceedings.

Movant is Plaintiff in one of the earliest-filed of the eleven class action cases filed to date against T-Mobile US, Inc. and/or T-Mobile USA, Inc. (collectively, "T-Mobile") relating to the instant data breach. Plaintiff anticipates that many additional cases will be filed, as well. Plaintiffs in each of the Actions allege that T-Mobile's deficient security protocols permitted unauthorized individuals to gain access to T-Mobile's servers and exfiltrate the personal information of at least 37 million current T-Mobile customers. T-Mobile has released little information about the data breach, but acknowledged that the bad actor first accessed and obtained data starting on or around November 25, 2022, and that T-Mobile failed to detect the breach until January 5, 2023.

...

As alleged in the Actions, the consequences of T-Mobile's data breach are severe: the categories of personal information exposed include but are not limited to a consumer's name, billing address, email, phone number, date of birth, account number, and account information such as the number of lines on the account and service plan features. All of the Actions allege violations of various state and federal statutes and common law principles against T-Mobile relating to the breach, and all seek certification of similar classes and/or subclasses of victims. All of the class actions filed against T-Mobile also contain common allegations and common questions of fact.

Consistent with the Panel's decisions in recent data breach litigation, Movant seeks the consolidation and transfer of the Actions to the U.S. District Court for the Western District of Washington, Seattle Division, where T-Mobile is headquartered, where its allegedly tortious conduct is centered, and where crucial witnesses and documents will be located. Alternatively, Movant requests transfer to the Western District of Missouri.

## II. LEGAL STANDARD

The Panel may transfer and coordinate or consolidate actions containing common questions of fact pursuant to Section 1407 if transfer will facilitate the convenience of the parties and witnesses, and promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407. Typically, four factors are considered in deciding whether to transfer a case under Section 1407:

1. The elimination of duplication in discovery;
2. The avoidance of conflicting rules and schedules;
3. The reduction of litigation cost; and
4. The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

*See* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). Each of the above factors favors transfer and consolidation of the cases filed against T-Mobile.

### III. ARGUMENT

**A.  Pretrial Transfer and Consolidation under Section 1407 is Appropriate and Necessary in this Litigation**

This litigation satisfies the requirements for consolidation and transfer under 28 U.S.C. § 1407. The Actions involve similar allegations and legal standards, and there will likely be numerous additional actions filed. Consolidation of these cases will eliminate duplicative discovery, avoid the risk of inconsistent rulings, and reduce litigation costs and efforts.

**1.  The Litigation Involves Common Questions of Fact**

To determine whether consolidation under Section 1407 is appropriate, the Panel looks to the pleadings to determine whether common questions of fact are present—in this case, as with the lawsuits filed after the 2021 T-Mobile data breach, the complaints clearly present common questions of fact. Each of the complaints is based on allegations that T-Mobile permitted a massive security breach in violation of various statutes and state common law, and all seek certification of similar classes and/or subclasses. In December 2021, this Panel consolidated cases related to the 2021 T-Mobile data breach, holding that they presented common factual questions concerning the alleged breach, including: "T-Mobile's data security practices and whether those practices met industry standards; how the malfeasants obtained access to T-Mobile's system; the extent of the personal information affected by the breach; when T-Mobile knew or should have known of the breach; and T-Mobile's investigation into the breach."[1] *In re: T-Mobile Customer Data Security*

---

[1] A proposed settlement has been preliminarily approved and a final approval motion is currently pending in the multidistrict litigation related to the 2021 data breach, which was consolidated for pretrial proceedings in the Western District of Missouri before Judge Brian C. Wimes. The 2022

3

*Breach Litigation*, 576 F. Supp. 3d 1373, 1375 (J.P.M.L. 2021). The instant Actions all present those same common questions of fact regarding the 2022 data breach.

This Panel has also consolidated other large-scale data breach cases due to the inherent common questions of fact. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 544 F. Supp. 3d 1371, 1372 (J.P.M.L. 2021); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1354 (J.P.M.L. 2019); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019); *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1324–25 (J.P.M.L. 2017).

### 2. Transfer and Consolidation Will Prevent Duplicative Discovery

The parties will face duplicative discovery if the cases are not transferred and consolidated due to the substantially similar allegations in each of the Actions. Transfer and consolidation under Section 1407 "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980).

In the instant Actions, the parties will necessarily engage in duplicative discovery without transfer and consolidation. All plaintiffs will seek the same documentation from T-Mobile, will seek to depose the same witnesses, and will likely propound substantially similar requests for admission and interrogatories. T-Mobile will raise the same defenses, argue the same objections

---

data breach is a new, separate breach, and T-Mobile's counsel confirmed on the record at the fairness hearing that any claims related to the 2022 breach would not be released by the settlement in the 2021 data breach litigation, which has no bearing on such claims.

4

to discovery and class certification, and assert the same privileges in each of these cases. Consolidation of the Actions will permit the parties to coordinate their efforts in a single proceeding, promoting efficiency and preserving party and judicial resources.

### 3. The Parties Face Inconsistent Pretrial Proceedings Absent Transfer and Consolidation

As the Panel noted when consolidating actions related to the 2021 T-Mobile data breach, centralization in data breach cases "prevent[s] inconsistent pretrial rulings, including with respect to class certification." *In re: T-Mobile Customer Data Security Breach Litigation*, 576 F. Supp. 3d at 1375. Because of the similarity of the allegations in the Actions and the high likelihood that future filed actions related to the 2022 data breach will contain the same or substantially similar allegations related to the 2022 data breach, the possibility of inconsistent rulings on pretrial motions is high. For this reason, consolidation is in the best interests of all parties to the litigation and the courts.

### 4. There are Enough Actions to Support Centralization

There are currently eleven class action cases pending against T-Mobile related to the 2022 data breach, and Movant believes that many more will follow. The data breach that is the subject of the Actions involved millions of individuals and, like the data breach in 2021, has received a great deal of publicity—accordingly, numerous tag-along actions will likely be filed against T-Mobile. *See, e.g.*, *In re: T-Mobile Customer Data Security Breach Litigation*, 576 F. Supp. 3d 1373 (consolidating case regarding the 2021 T-Mobile data breach where 39 related actions were pending in nine districts prior to consolidation); *In re 21st Century Oncology Customer Data Security Breach Litigation*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("With more than two million patients affected by the data breach, additional tag-along actions also may be forthcoming.").

5

Further, the Panel has routinely ordered centralization even where three or fewer cases were pending. *See, e.g.*, *In re Wireless Tel. Replacement Prot. Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (consolidating three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Phila. Life Ins. Co. Sales Pracs. Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978). Given the number of current Actions and likely tag-along actions related to the instant data breach, transfer and consolidation is appropriate.

**B.      The Western District of Washington is the Appropriate Transferee Forum**

In selecting the transferee court, the Panel considers several factors, including "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Manual for Complex Litigation, Fourth* § 20.131 (2004). The Western District of Washington is the appropriate transferee forum here.

Currently, the eleven related Actions are pending in a variety of districts, with the Western District of Washington containing a majority of the actions. *See* Schedule of Actions (two actions filed in the Central District of California, three actions filed in the Western District of Washington, and one action filed in each of the following districts: District of Kansas, District of New Jersey, District of South Carolina, Northern District of California, Northern District of Florida, and the Western District of Missouri). None of the Actions have progressed past the initial filing of the complaint. Accordingly, the location where cases have progressed furthest is a neutral factor in the instant case, and the location of the largest number of cases is weighs in favor of the Western District of Washington.

6

The other factors also weigh heavily in favor of transfer to the Western District of Washington. Defendant T-Mobile maintains its corporate headquarters in Bellevue, Washington—approximately ten miles from the proposed transferee courthouse—where many of the crucial witnesses and documents will be located. It is common practice for cases to be consolidated in the home district of the defendant, particularly in the context of data breach litigation. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d at 1374–75 ("We select the District of Maryland as the transferee district for this litigation. Marriott is headquartered in that district, and relevant documents and witnesses thus likely will be found there."); *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d at 1326 ("We select the Northern District of Georgia as the transferee district for this litigation. Equifax is headquartered in that district, and relevant documents and witnesses thus likely will be found there."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354–55 (J.P.M.L 2016) ("We conclude that the Northern District of California is an appropriate transferee district for this litigation. Defendant Yahoo's corporate headquarters is located within the district, and therefore relevant documents and witnesses are likely to be located there."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d at 1358 ("The Middle District of Florida is an appropriate transferee forum for this litigation. 21st Century is headquartered in this district, and the witnesses and documents relevant to the facts of this litigation are located there.").

As with *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002), "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services." *Id.* at 1355; *see also In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (choosing a transferee

forum in an "accessible metropolitan location"). Seattle, Washington is an easily accessible forum, as it is served by the Seattle-Tacoma International Airport, which is less than fifteen miles from the proposed transferee courthouse. Because plaintiffs, counsel, class members, experts, and witnesses are likely to be located across the country, this accessible transportation will serve to minimize cost and inconvenience to all parties.

Finally, the judges of Western District of Washington have the experience, skill, and caseload appropriate to oversee the instant action. Because the District has no MDL cases currently pending, it "is not currently overtaxed with other multidistrict dockets; and . . . possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 173 F. Supp. 2d. 1377, 1380 (J.P.M.L. 2001) (transferring fourteen pending actions to the Western District of Washington for coordinated or consolidated pretrial proceedings). Likewise, having concluded several MDLs, the District has a proven ability to manage MDLs in an efficient and expeditious manner. *See, e.g.*, *In re: Park-West Galleries, Inc. Mktg. & Sales Practices Litig.*, 655 F. Supp. 2d 1378 (J.P.M.L. 2009) (transferred for coordination in Western District of Washington); *In re Phenylpropanolamine*, 173 F. Supp. 2d. 1377 (same). Unlike when the cases regarding the 2021 T-Mobile data breach were before the Panel, the Western District of Washington no longer holds a high vacancy rate and is not experiencing any judicial emergencies;[2] it currently has four active judges and eleven senior status judges, any of whom would be well suited to oversee this litigation. Further, the three current judicial vacancies in the Western District of Washington all

---

[2] *See Judicial Emergencies*, UNITED STATES COURTS (Feb. 5, 2023), https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last visited Feb. 5, 2023).

have nominees pending.[3] The Western District of Washington thus has the judicial resources to oversee the instant action.

C. **In the Alternative, the Western District of Missouri is an Appropriate Transferee Forum**

Should the Panel determine that the Western District of Washington cannot accommodate this case, the Western District of Missouri is also an appropriate forum for this litigation. It served as the transferee forum for litigation regarding the 2021 T-Mobile Data Breach, is a central and accessible forum for all parties, and has the capacity to efficiently manage this litigation. *See In re: T-Mobile Customer Data Security Breach Litigation*, 576 F. Supp. 3d 1373.

T-Mobile's second headquarters are located in Overland Park, Kansas—only twenty-five minutes from the main Western District of Missouri courthouse—and subsequently, some documents and witnesses will likely be located in close proximity to the Western District of Missouri. The Western District of Missouri is also geographically central, making it a convenient forum for nationwide litigation. *See, e.g.*, *In re Davol, Inc./C.R. Bard, Inc. Polypropylene Hernia Mesh Prods. Liab. Litig.*, 316 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018) (selecting transfer forum that was "centrally located geographically, making it a convenient forum for this nationwide litigation"). Further, T-Mobile has consented to the jurisdiction of the Western District of Missouri in the litigation regarding the 2021 data breach. *See In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d at 1375.

For these reasons, the Western District of Missouri would be an appropriate alternative transferee district for this litigation.

---

[3] *See Current Judicial Vacancies*, UNITED STATES COURTS (Feb. 5, 2023), https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited Feb. 5, 2023).

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff's motion for transfer of action pursuant to 28 U.S.C. § 1407 should be granted, and these related actions, as well as any subsequently filed actions containing similar allegations, should be transferred to the U.S. District Court for the Western District of Washington or, in the alternative, the U.S. District Court for the Western District of Missouri.

Dated: February 8, 2023

Respectfully submitted,

*/s/ Cari Campen Laufenberg*
Cari Campen Laufenberg
Gretchen Freeman Cappio
Derek Loeser
Juli Farris
Emma M. Wright
**KELLER ROHRBACK L.L.P.**
claufenberg@kellerrohrback.com
gcappio@kellerrohrback.com
dloeser@kellerrohrback.com
jfarris@kellerrohrback.com
ewright@kellerrohrback.com

Christopher Springer
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Norman E. Siegel
Jillian Dent
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Rd., Ste. 200
Kansas City, MO 64112
(816) 714-7100
siegel@stuevesiegel.com
dent@stuevesiegel.com
vahle@stuevesiegel.com

James J. Pizzirusso
**HAUSFELD LLP**
888 16th St. NW, Ste. 300
Washington, DC 20006
jpizzirusso@hausfeld.com

Renner Walker
Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street
14th Floor
New York, NY 10004
rwalker@hausfeld.com
snathan@hausfeld.com

*Counsel for Plaintiff Stephan Clark*